Matter of State of New York v Andrew VV. (2023 NY Slip Op 03381)

Matter of State of New York v Andrew VV.

2023 NY Slip Op 03381

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

535025
[*1]In the Matter of the State of New York, Respondent,
v
Andrew VV., Appellant.

Calendar Date:May 4, 2023

Before:Garry, P.J., Egan Jr., Clark, Reynolds Fitzgerald and Ceresia, JJ.

Adam H. Van Buskirk, Auburn, for appellant.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Robert J. Muller, J.), entered February 4, 2022 in Washington County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to revoke respondent's regimen of strict and intensive supervision and treatment, found respondent to be a dangerous sex offender and confined him to a secure treatment facility.
Respondent has a history of inappropriate and compulsive sexual behavior, including the molestation of young children, dating back to his childhood. In satisfaction of numerous charges stemming from allegations that he had touched the breasts, buttocks and vagina of a four-year-old female relative and pinched and grabbed the buttocks of a 16-year-old male relative, respondent pleaded guilty in 2015 to one count of attempted sexual abuse in the first degree. He was sentenced to a prison term of three years followed by 10 years of postrelease supervision. As the conclusion of his prison term neared, petitioner commenced a Mental Hygiene Law article 10 proceeding seeking to confine respondent to a secure treatment facility. Respondent consented to a finding that he suffered from a mental abnormality as defined in Mental Hygiene Law article 10, waived his right to a dispositional hearing and consented to his confinement in a secure treatment facility. As such, Supreme Court (Bruening, J.) issued an order in February 2018 that adjudicated respondent to be a dangerous sex offender requiring civil confinement and committed him to a secure treatment facility.
In August 2018, respondent petitioned for discharge from confinement (see Mental Hygiene Law § 10.09). Based upon a review of various psychological and investigative reports and respondent's stipulation that he suffered from a mental abnormality, Supreme Court (Popeo, J.) ordered in June 2019 that he be released into the community on a regimen of strict and intensive supervision and treatment (hereinafter SIST). The conditions of that supervision prohibited respondent from, among other things, possessing sexually explicit material, engaging or participating in online computer services involving the exchange of electronic messaging or the establishment of sexual encounters, possessing a cell phone without authorization and using the Internet to possess pornographic material. Respondent was further required to comply with the requirements of the Sex Offender Registration Act (see Correction Law art 6-C [hereinafter SORA]). Respondent was released to SIST and postrelease supervision on July 9, 2019.
Three months later, on October 16, 2019, respondent was observed by a parole officer sitting at a bus stop across the street from the parole office and looking at what appeared to be a cell phone that he did not have approval to possess. The parole officer approached respondent to investigate, and the ensuing inspection of the phone revealed that it had Internet capabilities, that the photo gallery contained a picture [*2]of an unidentified nude female, that respondent had used the phone to view pornography on the web and that messaging and social media applications were installed on it. It further appeared that respondent had established an email address, with the user name of "yourdeviantarousal," without registering that address as required by SORA. Respondent admitted that he had purchased the phone without disclosing that fact to his parole officer and that he had used the phone to access pornographic websites and to use messaging and social media applications. Respondent was then detained on a parole warrant for violating the conditions of his release.
Petitioner commenced this Mental Hygiene Law article 10 proceeding in May 2021, seeking an order revoking respondent's release to SIST and finding him to be a dangerous sex offender requiring confinement to a secure treatment facility. Following a hearing at which two psychologists who evaluated respondent testified, Supreme Court (Muller, J.) rendered a decision from the bench in January 2022 finding that petitioner had established by clear and convincing evidence that respondent is a dangerous sex offender requiring confinement. The court thereafter issued an order that granted the petition and committed respondent to a secure treatment facility. Respondent appeals.
We affirm. Mental Hygiene Law article 10 defines a dangerous sex offender requiring confinement as "a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]). A sex offender requiring SIST, in contrast, is "a detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.03 [r]). In other words, "the Mental Hygiene Law draws 'a distinction between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients and only the latter may be confined' " (Matter of State of New York v David HH., 205 AD3d 1105, 1106 [3d Dept 2022], quoting Matter of State of New York v Michael M., 24 NY3d 649, 659 [2014]). Petitioner, as the party seeking to revoke respondent's release to SIST, bore the burden of showing that he "is a dangerous sex offender requiring civil confinement" (Matter of State of New York v David HH., 205 AD3d at 1105; see Matter of State of New York v Justin R., 187 AD3d 1464, 1465-1466 [3d Dept 2020]).
In an effort to do so, petitioner presented evaluation reports by, and testimony from, two psychologists who interviewed respondent and reviewed pertinent records in the wake of his SIST violations. The first psychologist, Jack Nocera, diagnosed respondent with antisocial personality [*3]disorder and persistent depressive disorder, as well as hypersexuality, a condition characterized by higher frequency and/or more intense sexual urges, behaviors or fantasies that are problematic to the individual. Nocera did not diagnose respondent with pedophilic disorder because he was not convinced that respondent's behavior toward children reflected a sexual attraction to children as opposed to a more general arousal at the thought of exercising power and control over his victims. Nevertheless, Nocera viewed respondent as having an opportunistic, "generalized sexuality" that would cause him to exhibit sexualized behavior in a number of situations. Nocera further observed that respondent had trouble controlling that conduct while released to SIST because he "tend[ed] to use two things, sex and food, to cope when he is under stress," and he was admittedly having problems with feelings of isolation, depression, stress and anger almost immediately from the time of his release from confinement. Respondent promptly began contacting women in the community via social media and watching pornography to cope with those feelings — with his pornography habit eventually consuming half of his day — and he acknowledged to Nocera that the negative feelings he was experiencing created a high risk to reoffend. Respondent further threw away the antidepressant medication he had been prescribed while under SIST, which was particularly bad because it reduced his libido as well as his depressive thoughts, and he conceded that he felt unable to discuss his struggles with either his parole officer or his treatment provider. Indeed, respondent admitted to Nocera that he deliberately used the cell phone in front of the parole office because he wanted to be caught, explaining that he felt overwhelmed and believed that being confined to a treatment facility might be better for him. Nocera agreed with respondent's own assessment, opining that his use of sex as a coping mechanism "greatly increased his risk of committing another sexual offen[s]e" and that his inability to control this behavior rendered him a dangerous sex offender requiring confinement.
The second psychologist, Jacob Hadden, had previously opined that respondent was an appropriate candidate for SIST and, after being asked to do a new evaluation in this matter by counsel for respondent and being appointed to do so, changed his opinion to believe that respondent was a dangerous sex offender requiring confinement. Hadden diagnosed respondent with pedophilic disorder, posttraumatic stress disorder, antisocial personality disorder and the condition of hypersexuality. In Hadden's view, hypersexuality caused respondent to have a compulsive preoccupation with sex, including a focus on young children, and his pedophilic disorder, antisocial personality disorder and hypersexuality all impaired his ability to control his compulsive sexual behavior. Hadden also explained that, although respondent's pornography usage [*4]during his release would not have changed Hadden's prior opinion regarding his suitability for SIST, other choices he made while on SIST, such as to use social media to interact with people and to stop taking his antidepressant medication, "reflect[ed] high levels of ambivalence about change and remaining in the community" and set a course for escalating sexual behavior. In view of that behavior and respondent's superficial engagement with treatment during his release, Hadden opined that there was simply no way that respondent "could be safely managed in the community without exposing the community to undue risk" of new offenses and that confinement was required.
Respondent did not dispute the underlying facts of his conduct while under SIST and did not present any witnesses, instead arguing that his behavior did not reflect a difficulty in controlling his sexual conduct. Supreme Court rejected that argument in determining that respondent was a dangerous sex offender requiring confinement and, deferring to the court's implicit assessment that the testimony of Nocera and Hadden was credible, we are satisfied that petitioner met its burden of showing "that respondent has an inability to control his behavior such that he is likely to be a danger to others and to commit sex offenses if not confined" (Matter of State of New York v David HH., 205 AD3d at 1107; see Matter of State of New York v Justin R., 187 AD3d at 1467).
Finally, respondent argues that trial counsel rendered ineffective assistance by failing to seek a Frye hearing on the issue of whether hypersexuality, a condition that he was diagnosed with by both Nocera and Hadden, was a generally accepted condition in the field of psychology (see Frye v United States, 293 F 1013 [DC Cir 1923]). Respondent overlooks that Supreme Court would have been free to reject that request and rely upon a recent ruling in another court proceeding, "following a seven-day Frye hearing, determin[ing] that hypersexuality is generally accepted as a condition within the relevant psychological community" (Matter of State of New York v Allan A., 207 AD3d 635, 637 [2d Dept 2022], lv denied 39 NY3d 909 [2023]; see People v LeGrand, 8 NY3d 449, 458 [2007]). There was therefore nothing ineffective in counsel's decision to forgo a request for a Frye hearing that stood little or no possibility of success and, suffice it to say, "our review of the record as a whole establishes that respondent received meaningful representation" (Matter of State of New York v Jamie KK., 168 AD3d 1231, 1234 [3d Dept 2019]; cf. Matter of State of New York v Kenneth II., 190 AD3d 33, 47-48 [3d Dept 2020]).
Garry, P.J., Clark, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.